UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| APRIL MIRANDA, | No. CV 06-1599-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 21, 2006, seeking review of the Commissioner's denial of her applications for Supplemental Security Income payments and Disability Insurance Benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on April 13, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on October 24, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 28, 1980. [Administrative Record ("AR") at 44, 49, 53.] She has an eleventh grade education[1] and past work experience as a dog bather and dog groomer. [AR at 15, 60, 81-84, 181-82.]

On August 17, 2004, plaintiff protectively filed her current applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she had been unable to work since March 1, 2004, due to schizophrenia, bipolar disorder, anxiety, and depression. [AR at 44, 49, 59, 70.] After a denial of her applications at the initial level, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 20-27.] The hearing was held on December 9, 2005, at which time plaintiff appeared without counsel and testified on her own behalf. A vocational expert also testified. [AR at 178-204.] On December 28, 2005, the ALJ determined that plaintiff was not disabled. [AR at 11-17.] When the Appeals Council denied review on February 24, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 4-7.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] Although plaintiff indicated in the Disability Report that she has a ninth grade education, she testified at the hearing that she in fact has an eleventh grade education. [AR at 65, 75, 182.]

2

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[2] [AR at 16.] At step two, the ALJ concluded that plaintiff had a "severe" impairment of major depressive disorder with psychotic features. [Id.] At step three, the ALJ determined that plaintiff's impairment did not meet or equal any impairment in the Listing. [Id.] The ALJ further opined that plaintiff retained the residual functional capacity ("RFC")[3] to perform simple, routine work and work tasks that require limited contact with the general public.[4] [Id.] At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work as a dog bather or dog groomer. [Id.] At step five, the ALJ found that plaintiff could perform other work as a day worker, hand packager, or cook helper, and that these occupations exist in significant numbers in the local and national economies. [AR at 17.] Accordingly, the ALJ determined that plaintiff was not disabled. [Id.]

---

[2]   The ALJ determined that plaintiff met the nondisability requirements for a period of disability and Disability Insurance Benefits, and was insured through June 30, 2004, but not thereafter. [AR at 16.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4]   The ALJ further found that plaintiff had no physical or exertional limitations. [AR at 16.]

4

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) failed to properly consider the treating physician's opinion of disability; (2) failed to properly consider the lay witness testimony; and (3) erred in accepting vocational expert testimony that conflicted with the Dictionary of Occupational Titles ("DOT"). Joint Stipulation ("Joint Stip.") at 2. The Court agrees that the ALJ failed to properly weigh the opinions of plaintiff's treating physician, and remands the matter for further proceedings.[5]

## THE TREATING PHYSICIAN'S OPINION

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater

---

[5] The results of the determination of Issue No. 1 on remand may impact Issue No. 3; therefore, Issue No. 3 will not be addressed at this time. In addition, on remand, the ALJ should address Issue No. 2 by giving proper consideration to the lay testimony of plaintiff's husband. Lay witness testimony by friends and family members who have the opportunity to observe plaintiff on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering...[T]his is particularly true of witnesses who view the claimant on a daily basis..."). An ALJ may reject lay testimony only for specific reasons "germane to each witness." Id.
  Failure to consider lay testimony will be considered harmless error only if "it [is] clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). The Ninth Circuit has held that remand is in order where an ALJ improperly rejects the claimant's testimony and fails to address the testimony of the lay witness. See Robbins at 885 ("Because the ALJ did not make a legally sufficient adverse credibility finding with regard to [the claimant's] own testimony, we cannot say with respect to [the son's] testimony that 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'"). Here, the ALJ did not address the Third Party report submitted by plaintiff's husband. [AR at 102-10.]

5

opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)). Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted, the ALJ may reject it in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).

On April 5, 2005, Dr. Ferrah Ferrer, a staff psychiatrist at Prototypes Inter-Community Alternatives Network ("Prototypes"), submitted a reported concerning plaintiff's mental impairment. [AR at 165-66.] She reported that plaintiff had been an outpatient client at Prototypes since January 17, 2003, receiving weekly individual therapy and monthly psychiatric consultation. [AR at 165.] The report indicates that plaintiff had been prescribed medications including Paxil, Seroquel, Wellbutrin, and Depakote. [Id.] Dr. Ferrer noted that plaintiff had numerous psychiatric symptoms including daily auditory and visual hallucinations and daily paranoid ideation. [Id.] Dr. Ferrer concluded that the hallucinations made focusing on and completing mental tasks difficult for plaintiff, while the paranoid ideation resulted in plaintiff avoiding social interactions with people outside of her home, due to fears that someone would harm her. [Id.] She also commented that plaintiff experienced extreme difficulty in concentrating and demonstrated memory impairment. [Id.] Dr. Ferrer further explained that plaintiff's presentation was of depressed mood most of the day, lack of pleasure, weight gain, difficulty sleeping (i.e., insomnia and hypersomnia), excessive fatigue, and difficulty concentrating. [Id.] Dr. Ferrer diagnosed plaintiff with schizoaffective disorder, depressed type, and assessed a Global Assessment of Functioning ("GAF") score of 35, indicating impairment in reality testing or major impairment in several areas.[6] [Id.] She concluded that

---

[6] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to

plaintiff's symptoms were chronic and severe and significantly interfered with her ability to secure and maintain employment. [AR at 166.]

Dr. Ferrer's opinion contradicted that of Dr. David Bedrin, a consultative examiner. On November 22, 2004, Dr. Bedrin administered a complete psychiatric evaluation. [AR at 137-44.] He recorded plaintiff's assertion that she had been depressed for approximately nine years. [AR at 137.] Dr. Bedrin also noted plaintiff's statement that she was psychiatrically hospitalized about four years earlier, because she was cutting herself.[7] [AR at 139.] However, plaintiff reported that, for the past two years, she had received treatment from a psychotherapist once per week and a psychiatrist once per month.[8] [Id.] Plaintiff asserted that her feelings of depression had improved since receiving treatment. [AR at 137.] In fact, plaintiff asserted that, prior to the treatment, she "would never want to get out of bed or do anything." [AR at 139.] Still, Dr. Bedrin observed that plaintiff reported needing medication every night in order to sleep. [AR at 137.]

Plaintiff reported to Dr. Bedrin that she experienced auditory hallucinations, in which she hears somebody calling her name. [AR at 138.] In addition, plaintiff stated that she had paranoia and got "ideas of reference," where she thinks that people talk about and laugh at her. [Id.] However, she denied other psychotic or manic symptoms. [Id.] Plaintiff also alleged that she had panic attacks about once every two weeks. [Id.]

Dr. Bedrin also recorded plaintiff's history of legal issues and alcohol and drug abuse. [AR at 140.] Specifically, plaintiff asserted that she had been drinking alcohol and using drugs (i.e.,

---

impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 2000) (hereinafter "DSM IV"). A GAF score of 31-40 denotes "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work...)." DSM IV, at 34.

[7] Plaintiff stated that she first received outpatient mental health treatment about four years prior to the exam but only for about three months. [AR at 139.] She started receiving treatment again about two years prior to the exam. [Id.]

[8] Dr. Bedrin noted that plaintiff took medications such as Depakote, Seroquel, Benztropine, and Paxil. [AR at 139.]

crystal methamphetamine and marijuana) since she was 14 years old.[9] [Id.] However, she asserted that she stopped using alcohol and drugs approximately three years earlier. [Id.] In addition, plaintiff stated that she was arrested about five years prior to the exam when she supposedly threatened her ex-husband. [Id.] These charges were later dropped. [Id.]

The mental status examination administered by Dr. Bedrin revealed the following: plaintiff's attitude and behavior were normal; there was no evidence of suicidal ideation or intent, homicidal ideation or intent, hallucinations, delusions, or other psychotic symptoms; there was no psychomotor retardation or psychomotor excitability; plaintiff was oriented to person, time, place, and purpose; plaintiff's recent and remote memories were intact; there was no bizarreness or personalization; and plaintiff's judgment and insight were good. [AR at 141.] However, Dr. Bedrin observed that plaintiff appeared depressed, her affect was constricted, she displayed mild retardation of speech, her immediate recall was mildly impaired, and her intellectual functioning was a little below average. [AR at 141-42.]

Dr. Bedrin diagnosed plaintiff with major depressive disorder with psychotic features, panic disorder with agoraphobia by history, and past history of alcohol, cannabis and amphetamine abuse, all currently in remission. [AR at 143.] He assessed plaintiff's GAF score at 58, which is indicative of moderate symptoms or moderate difficulty in social or occupational functioning.[10] [Id.] Dr. Bedrin opined that plaintiff was able to perform simple tasks but may have difficulty in her ability to perform complex tasks, secondary to memory problems; was able to maintain regular attendance in the workplace; was able to perform work activities on a consistent basis, without special or additional supervision; was able to complete a normal workday without interruptions resulting from her psychiatric condition; was able to accept instructions from supervisors; may have difficulty in her ability to interact with coworkers and the public, secondary to her retardation of speech; and was able to deal with the usual stresses encountered in competitive work. [Id.]

---

[9] Plaintiff was 24 years old at the time of the consultative examination. [AR at 137.]

[10] A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM IV, at 34.

The February 9, 2005, opinion of the state agency psychiatrist, Dr. C. H. Dudley, was in concurrence with Dr. Bedrin's findings. Specifically, Dr. Dudley opined that plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, and interact appropriately with the general public. [AR at 159-60.] Dr. Dudley concluded that plaintiff was capable of simple tasks with limited public contact. [AR at 161.]

In rejecting Dr. Ferrer's opinion and adopting the findings of Dr. Bedrin and Dr. Dudley, the ALJ stated, in pertinent part, as follows:

> Dr. Ferrer is [plaintiff's] treating psychiatrist, as defined in the Social Security Regulations. However, this factor alone does not give her opinion more weight than other examining and/or consulting psychiatrists and psychologists. Her opinion should be supported by objective findings. In this case, the reported objective findings by Dr. Ferrer are based on [plaintiff's] self-reports, and are sparse and vague. Dr. Ferrer states that [plaintiff] has daily auditory and visual hallucinations and daily paranoid ideation. However, she does not give any specifics, descriptions, or explanations of what these hallucinations and paranoid ideation are. It is reported by Dr. Ferrer that [plaintiff] has been receiving weekly individual therapy and monthly psychiatric consultations since January 17, 2003. However, no reports and/or progress notes, have been submitted. Dr. Ferrer has submitted only one brief report dated April 5, 2005, and in this report, she gives no details of what transpired at these weekly psychotherapy sessions and monthly psychiatric evaluations. She made no reference to [plaintiff's] history of alcohol and drug abuse. The mental status examination in this report was very brief, and Dr. Ferrer did not say when this examination was conducted. Furthermore, Dr. Ferrer assessed [plaintiff's] GAF to be very low at 35, indicating serious impairment. However, the prescribed treatment of psychotropic medications and weekly individual psychotherapy appears to be conservative for an individual with purportedly significant[] mental[] limitations. Moreover, if there has been no improvement after two years of treatment, why has Dr. Ferrer not prescribe[d] more aggressive therapy, such as different combination of medications and/or higher dosages of her current medication regimen? It appears that [plaintiff's] treatment plan since January 2003 has remained the same. It is noted that when Dr. Bedrin evaluated [plaintiff], she reported that with medication and therapy, [plaintiff's] symptoms have improved and that she feels better. At the hearing, [plaintiff] reiterated that some of her symptoms are "controlled by treatment[.]" In any event, for the above reasons, I do not give controlling weight to Dr. Ferrer's diagnosis of schizoaffective disorder nor to her opinion that [plaintiff] is significantly mentally disabled.

[AR at 14.]

Plaintiff contends that the ALJ failed to properly consider Dr. Ferrer's opinion. Joint Stip. at 3. Moreover, considering that plaintiff was unrepresented during the hearing, plaintiff argues

9

1  that if the ALJ had any concerns over Dr. Ferrer's evaluation being unsubstantiated, the proper
2  response was to further develop the record, not to reject the opinion. Id. at 6-7, 9.

3  The Court finds that the ALJ failed to provided legally sufficient reasons for rejecting Dr.
4  Ferrer's findings. First, the ALJ's determination that Dr. Ferrer's reported objective findings were
5  based on plaintiff's self-reports was not supported by substantial evidence. [AR at 14.] In her
6  report, Dr. Ferrer summarized plaintiff's presentation (i.e., depressed mood, lack of pleasure,
7  weight gain, difficulty concentrating), which appears to be based on Dr. Ferrer's observations from
8  a mental status examination. [AR at 165.] These findings are medically demonstrable and
9  observable phenomena that indicate specific abnormalities of behavior, mood, thought, memory,
10 orientation, or perception.[11]  See 20 C.F.R. §§ 404.1528(b), 416.928(b).  Hence, it cannot be
11 concluded from the current record that Dr. Ferrer based her findings solely on plaintiff's self-
12 reports.

13 The ALJ also improperly rejected Dr. Ferrer's opinion by reasoning that her reported
14 objective findings were sparse and vague. [AR at 14.] The ALJ correctly noted that Dr. Ferrer did
15 not give any specifics, descriptions, or explanations of the hallucinations and paranoid ideation
16 that plaintiff experienced. [Id.] In addition, he properly recognized that Dr. Ferrer did not submit
17 reports or progress notes providing details of what transpired at the weekly psychotherapy
18 sessions and monthly psychiatric evaluations. [Id.] However, to the extent that the ALJ intended
19 to reject Dr. Ferrer's opinion based on these reasons, the ALJ should have further developed the
20 record.

21 Although the claimant bears the burden of proving disability, the ALJ in a social security
22 case has an independent "'special duty to fully and fairly develop the record and to assure that the
23 claimant's interests are considered.'" Smolen, 80 F.3d at 1288 (quoting Brown v. Heckler, 713
24 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the
25 unrepresented claimant. Id. However, when a claimant "is not represented by counsel, the [ALJ's]
26 duty is 'to scrupulously and conscientiously probe into, inquire of, and explore for all relevant

---

[11] Symptoms, on the other hand, are a claimant's own description of her physical or mental impairment. 20 C.F.R. §§ 404.1528(a), 416.928(a).

facts,' and he must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). Moreover, the Ninth Circuit in Smolen held that if the ALJ was of the opinion that he needed to know the basis of a treating physician's opinion in order to evaluate the evidence, he had a duty to conduct an "appropriate inquiry" by either subpoenaing the treating physician, submitting further questions to the treating physician, or continuing the hearing to augment the record. 80 F.3d at 1288.

In light of the fact that plaintiff was not represented during the administrative hearing, the ALJ should have re-contacted Dr. Ferrer in order to determine the basis of her opinion, rather than assuming that the vagueness and sparsity of the medical records necessarily equated with her opinion being unreliable. See id. While the ALJ at the hearing noted that the record from Dr. Ferrer (i.e., Prototypes) was sparse, and gave plaintiff one week to supplement the record with additional reports and treatment notes [AR at 203], this action did not resolve the ALJ's duty to conduct an "appropriate inquiry." As plaintiff undeniably had some level of mental impairment and was unrepresented, it was unreasonable for the ALJ to place the onus on plaintiff to gather additional medical records from Dr. Ferrer and submit them within one week, especially when the lack of those records was critical to the ALJ's decision.[12]

Similarly, the ALJ improperly rejected Dr. Ferrer's opinion by reasoning that the mental status examination in her report was very brief and the date of the examination was not stated. [AR at 14.] As explained above, the ALJ should have further developed the record to determine whether a more comprehensive report of the mental status examination existed before making a negative assumption that the brevity of the examination rendered the findings unreliable.

The ALJ also improperly noted that plaintiff's prescribed treatment of psychotropic medications and weekly individual psychotherapy appeared to be conservative for an individual

---

[12] In contrast, the ALJ accepted plaintiff's explanation for the late filing of her request for a hearing -- that as a result of her being on different medications she did not understand the disability procedures -- and excused the late filing. [AR at 11.] The ALJ did not afford plaintiff this similar level of consideration in connection with the lack of medical records.

11

with purportedly significant mental limitations. [AR at 14.] Furthermore, the ALJ erred in reasoning that, because there had been no improvement after two years of treatment, Dr. Ferrer should have prescribed more aggressive treatment such as a different mixture or dosage of medications. [Id.] As noted above, plaintiff was prescribed multiple antidepressants (i.e., Paxil, Wellbutrin) and antipsychotics (i.e., Seroquel, Depakote). [AR at 165.] The ALJ offers no explanation as to why he -- without the benefit of a medical expert -- found such treatment to be conservative. Rather, it appears that the ALJ erroneously interjected his own medical opinion as to the proper treatment that Dr. Ferrer should have provided. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record).

Moreover, the ALJ erroneously suggested that, if there had been no improvement after two years of treatment, more aggressive treatment should have been provided. First, Dr. Ferrer never stated that plaintiff's mental impairment had not improved. In addition, her report does not indicate what mixture or dosage of medications was provided prior to the current prescriptions. More importantly, a comparison of the list of prescribed medications contained in the August 29, 2004, Disability Report suggests that plaintiff had been given more aggressive treatment, as defined by the ALJ. [AR at 64.] Specifically, the Disability Report indicates that, in August 2004, plaintiff was taking Seroquel 200 mg, Benztropine 1 mg, Alprazolam 0.5 mg, Depakote 1000 mg, and Paxil 40 mg. [Id.] However, Dr. Ferrer's April 2005 report shows that plaintiff was no longer taking Benztropine and Alprazolam and was instead prescribed Wellbutrin. [AR at 165.] Furthermore, plaintiff's prescription for Seroquel was increased to 400 mg by April 2005 but her prescription for Depakote was decreased to 500 mg. [Id.] Thus, both a different combination of medications and different dosages were prescribed. Here, the ALJ has made improper assumptions and therefore, his assertions that Dr. Ferrer's prescribed treatment was not consistent with her findings were not specific and legitimate reasons for rejecting her opinions.

Finally, plaintiff's statements to Dr. Bedrin and her testimony at the hearing -- that her symptoms had improved after undergoing treatment -- did not constitute a legitimate reason for rejection. [AR at 14, 137, 191.] Plaintiff did not attest to the degree of improvement she

experienced, and her general assertions of improvement did not necessarily mean that she was not disabled. For example, at the consultative examination administered by Dr. Bedrin, plaintiff alleged that, in or about December 2000, she was psychiatrically hospitalized for cutting herself. [AR at 139.] An improvement from this mental state could reasonably support Dr. Ferrer's finding that plaintiff still had major impairment in her mental functioning. Moreover, plaintiff asserted that despite the improvement from the treatment, she continued to have auditory hallucinations, paranoia, panic attacks, and ideas of reference. [AR at 138.] Without further probing or support in the record, plaintiff's purported impairment was not a legally sufficient reason for rejecting Dr. Ferrer's opinion.

Accordingly, the Court concludes that the reasons given by the ALJ for rejecting Dr. Ferrer's opinion were not specific and legitimate. Remand is appropriate.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to further develop the record and to give proper consideration to Dr. Ferrer's opinion. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: December 15, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE